In re the MARRIAGE OF Kathryn Lee and Darwin Keith WAHL.

Upon the Petition of Kathryn Lee WAHL, Appellant,

and concerning

Darwin Keith WAHL, Appellee.

No. 3–58905.

Supreme Court of Iowa.

Oct. 20, 1976.

Warren A. Reiter, Knoxville, for appellant.

Claude H. Freeman, of Grefe & Sidney, Des Moines, for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

This appeal from a dissolution decree presents questions regarding child custody, child support, property division and attorney fees. We affirm the trial court.

Petitioner Kathryn Lee Wahl was 27 years old and respondent Darwin Keith Wahl was 30 years old at the time of trial. They were married October 8, 1966, and had two children, Lisa Linnae, born December 16, 1967, and Jason Kale, born May 21, 1973. Both parties were employed during most of the marriage, and they had modest accumulations.

After trial, the trial court dissolved the marriage, awarded custody of Lisa to Kathryn and Jason to Darwin, divided the assets of the parties, ordered Darwin to pay

$15 per week child support for Lisa, and made no award of alimony or attorney fees.

In this appeal, Kathryn contends the court erred in awarding custody of Jason to Darwin, in making an inequitable division of property, in ordering inadequate child support and in refusing to order Darwin to pay her trial court attorney fees. She now requests an award of attorney fees for the appeal.

I. *Split custody.* Kathryn contends the trial court should have awarded custody of both children to her. She relies on the principle that siblings should not be separated from one another without good and compelling reasons. See *In re Marriage of Woodward,* 228 N.W.2d 74, 75–76 (Iowa 1975). Split custody deprives children of the benefit of constant association with each other. As the innocent victims of marital bankruptcy, they should not be denied this benefit except when their best interests require it. *In re Marriage of Hagge,* 234 N.W.2d 138, 139 (Iowa 1975). This benefit is one of a number of factors which must be considered in determining what custody award should be made. *In re Marriage of Winter,* 223 N.W.2d 165, 166–167 (Iowa 1974).

Darwin has not challenged the award of Lisa's custody to Kathryn. Thus, the issue presented is whether Kathryn should have been awarded custody of both children or whether custody should remain divided.

The trial court made the following findings regarding custody:

"Both parties seek custody of the two minor children. Kathryn came from Melcher of a devout Catholic family. Darwin came from Pleasantville, is an only child, and is not particularly religious, although his parents are devout Congregationalists. There is little reason to prefer Kathryn or Darwin as parents. Both are fit, although their preoccupation with work limits each as a suitable parent because babysitters are obviously going to raise their children for a while during their formative years based on the record

upon the trial. Darwin plans to have his sixty-one year old mother who has had a stroke act as babysitter. Kathryn plans to have her landlady act as babysitter until she can secure a licensed person. Lisa does not want to visit her father and Kathryn is as concerned about that as Darwin. It is not clear whether the stress of the breakup caused Lisa's fears, whether she had help in turning against her father, or both plus other factors. Jason and his father are congenial. Also it is quite plain that Kathryn could not now live in Pleasantville with the two children harmoniously. Right or wrong, Darwin's mother feels strongly that Kathryn's girlfriend and roommate is turning her grandchildren against her and against their father. Religion is not a problem between Kathryn and Darwin but the court feels that the grandparents on both sides risk Lisa and Jason's best interests by too much assertiveness on this point. It is unusual to split custody but the court is impelled by this record to think that the two children will probably have a better chance of harmonious acquaintance with each other by separate custody than they would if the court should award both to either parent."

The court subsequently held:

"Applying the * * * custody factors set out in *In re Marriage of Winter,* 223 N.W.2d 165 (Iowa 1974), the Court concludes that if Kathryn has her job at 3-M and the custody of Lisa and if Darwin has his job at Armstrong and the custody of Jason, it will be in the best interest of the children and it will test fully the capacity of * * * [each party] to parent one child properly."

At trial, Kathryn denied turning Lisa against Darwin. She testified Lisa was advanced for her age and told Kathryn she hated her father because he struck Kathryn frequently during the marriage.

The appendix includes a report of psychological evaluation based on a mutually agreed upon examination of the entire family at the Des Moines Child Guidance Center in early 1976, about three months after

the decree was entered. The purpose of this examination was to determine the desirability of split custody. The report found each party had the capacity to be a good parent, but also found flaws in each. Regarding Kathryn, the report said, "Mother seemed to harbor a good deal of hostility towards father, which she has fostered in her daughter." The report concluded:

"Neither child was suffering from being separated from its sibling. Both children were experiencing a need for extra closeness with their parent, which is understandable after a divorce. The older child was developing a negative view of her father, which will not be helpful to her future adjustment. It is recommended that some form of separation counseling be initiated in order to help this family deal constructively with the children in the current situation."

Upon our de novo review of this record, we do not think it is in the best interest of Jason to remove him from his father's custody solely to assure him the benefit of constant association with Lisa. The effect of doing so would be to disrupt the stable relationship he now enjoys with his father and to expose him to the negative influences which have already harmed Lisa. We believe the present custody arrangement is the least detrimental available alternative. See *In re Marriage of Hagge,* supra; *In re Marriage of Winter,* supra; *In re Marriage of Neff,* 193 N.W.2d 82 (Iowa 1971); *Utter v. Utter,* 261 Iowa 683, 155 N.W.2d 419 (1967); *Phillips v. Phillips,* 251 Iowa 1310, 104 N.W.2d 832 (1960); 2 W. Nelson, Divorce and Annulment § 15.18 (Second Ed. 1961). The trial court has ordered liberal visitation which should permit Lisa and Jason to develop and maintain a beneficial association with each other.

The parties in this case should heed the advice of the Child Guidance Center. They should demonstrate their expressed love for the children by putting personal hostility aside, by cooperating regarding visitation, and by striving to foster a wholesome and loving relationship between the children and between the children and each parent.

The children have a right to know and love each other and both of their parents.

■ II. *Property division.* Kathryn alleges the trial court erred in dividing the assets of the parties. The parties owned a home in Pleasantville in which they had an equity of about $11,000. They also owned farm implements and other tools worth about $2300. In addition, they owned furnishings located in the home worth about $2000, two motor vehicles, and personal articles of undisclosed value. They owed about $4700 to a bank. Kathryn had taken some furnishings from the home and purchased others.

The trial court attempted to make an approximately equal division of the assets. Darwin was awarded the home, remaining household furnishings, the farm machinery and tools, a 1969 Dodge pickup truck, and his personal belongings. He was ordered to assume the debt on the home and the bank debt and to pay Kathryn a lump sum of $4225 in four equal annual installments. The $4225 figure represented one-half the equity in the home reduced by one-half the amount of the bank debt. Kathryn was also awarded the household furnishings in her possession, a 1972 Chevelle automobile, and her personal belongings.

Kathryn contends she should have been awarded the home or, in the alternative, should not have had one half the bank debt charged against her share of the equity in the home. She also argues she should have received more household furnishings.

We think the court was justified in attempting to make an approximately equal distribution of the assets of the parties under the principles in *Schantz v. Schantz,* 163 N.W.2d 398 (Iowa 1968), as modified in *In re Marriage of Williams,* 199 N.W.2d 339 (Iowa 1972). We believe the property division which was ordered accomplished that purpose fairly although not precisely.

We find no merit in Kathryn's contention to the contrary.

III. *Child support.* Kathryn contends Darwin should have been ordered to pay $25 per seek instead of $15 per week child

support. This is based on evidence regarding her needs and Darwin's testimony that if Kathryn were awarded custody of both children he could afford to pay $50 per week child support.

Parents are equally obligated to support their children. *Gerk v. Gerk,* 259 Iowa 293, 296–299, 144 N.W.2d 104, 107–108 (1966). Disparity in the amount each parent is required to contribute toward child support results from differences in ability of the parents to contribute. Each case is peculiarly dependent on its facts. *In re Marriage of Zoellner,* 219 N.W.2d 517, 525 (Iowa 1974).

Here, the facts support the court's order. Kathryn had take-home pay of about $500 per month, and Darwin about $650 per month. The $15 per week child support award approximately equalized the net income available each month in each household. Each parent must provide a home for one child of the marriage. Darwin had a commuting expense which Kathryn did not have at the time of trial. Based on all the circumstances, we do not believe the court erred in fixing Darwin's child support obligation at $15 per week.

IV. *Attorney fees in the trial court.* The trial court refused to order Darwin to pay Kathryn's trial court attorney fees. Kathryn contends this was error. Under principles explained in *In re Marriage of Zoellner,* supra, at 523, we do not think the trial court erred in refusing to require Darwin to pay Kathryn's attorney fees for trial.

V. *Attorney fees on appeal.* Kathryn has filed an application for an award of attorney fees for this appeal, supported by an itemized statement. Excluding the charge for services in the trial court, the statement shows charges of $895. It does not include a charge for appearance in this court for oral argument of the appeal. We hold Darwin should pay $750 toward Kathryn's attorney fees for this appeal. See *In re Marriage of Beeh,* 214 N.W.2d 170, 176 (Iowa 1974), and citations.

AFFIRMED.