**STATE of Iowa, ex rel., STATE OF SOUTH DAKOTA, COUNTY OF CLAY, OFFICE OF CHILD SUPPORT ENFORCEMENT, YANKTON, Appellant/Cross–Appellee,**

v.

**Alan Frank RIEMENSCHNEIDER, Appellee/Cross–Appellant.**

No. 89–1085.

Court of Appeals of Iowa.

Sept. 26, 1990.

Thomas J. Miller, Atty. Gen., Gordon Allen, Deputy Atty. Gen., and Robert R. Huibregtse, Asst. Atty. Gen., for appellant.

Donald J. Hemphill, Spencer, for appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Alan and Polly Riemenschneider were married in 1973. At the time of the marriage, Polly had a fifteen-month-old son, Jason. Alan adopted Polly's son, Jason, in 1977. Alan and Polly had a son in 1977.

Alan and Polly separated in 1982, and their marriage was dissolved in 1983. Alan was awarded primary care of both boys. In 1985 Jason moved to his mother's home. Alan and Polly entered into a stipulation, which the court adopted. The stipulation required Alan to pay Polly $150 per month child support under certain conditions, one of which was that Jason live with Polly.

In June 1987 Jason moved from Polly's house to his grandmother's house in South Dakota. Alan stopped child support payments in July 1987. In August 1987 Jason's grandmother applied for and received public assistance from the State of South Dakota for Jason's care.

The State of South Dakota initiated an action seeking reimbursement and current support from Alan. The State of Iowa then initiated this action against Alan pursuant to Iowa Code chapter 252A. Alan filed a verified denial. The court then entered an order pursuant to Iowa Code § 252A.6(7) referring the matter back to the initiating state, South Dakota, to determine whether Jason is in need or entitled to support from South Dakota or from Alan. South Dakota responded with verified testimony that Jason is not emancipated and is a dependent in need of assistance.

Following a hearing, the district court ordered Alan to reimburse one-half of the support which South Dakota provided Jason from August 1987 to March 1989. The court determined that Jason's mother would be obligated to repay the other half of the support. The court did not order Alan to pay any future support. The State appeals. Alan cross-appeals.

The State contends that Jason is entitled to current support from Alan because he is needy and entitled to support. The State also argues that Alan is obligated to pay the total amount of past public assistance provided by South Dakota because Polly is not a party to this action.

On cross-appeal, Alan contends that he is not obligated to pay any portion of the past support because the State of South Dakota did not comply with the district court's order under § 252A.6(7). We affirm.

Because the present case was brought pursuant to Iowa Code chapter 252A, our scope of review is de novo. *Heyer v. Peterson*, 307 N.W.2d 1, 4 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7).

We must first note that at the time the present case was initiated, Jason was sixteen years of age. Pursuant to the stipulation modifying the decree, Alan was required to provide support to Jason until he reached eighteen years of age unless it could be shown he was a full-time student. Because Jason has reached the age of eighteen years in March 1990, we believe any issue as to Alan's obligation to pay current support is now moot.

Alan argues that the State has failed to establish by a preponderance of the evidence that Alan had an obligation to reimburse the state of South Dakota for past

sums paid by the State to help support Jason. Alan argues that pursuant to Iowa Code chapter 252A.6(7), the initiating state must take such proof, including all testimony and other evidence necessary, after due deliberation to make a determination as to the necessity of support and transmit such evidence to the reviewing state. Alan maintains the only evidence available was a verified statement from a South Dakota circuit judge that Jason was in need of assistance and that South Dakota had paid support on his behalf.

The State argues that the testimony in the petition and the certified statement from the circuit judge conforms with the URESA statutes codified in South Dakota Laws ch. 25-9A (1985). The State contends that Alan's income is sufficient to obligate Alan to reimburse South Dakota for payments made in support of Jason.

Chapter 252A was enacted to supplant inadequate laws for the enforcement of support by providing for "a simplified two-state procedure by which the obligor's duty to support an obligee in another state may be enforced expeditiously...." *Beneventi v. Beneventi*, 185 N.W.2d 219, 222 (Iowa 1971). Pursuant to § 252A.6(7), upon a denial of charges contained in a URESA petition, the initiating state (South Dakota) must "take such proof, including the testimony of the petitioner and the petitioner's witnesses and such other evidence as the court may deem proper, and, after due deliberations, the court shall make its recommendation, based on all such proof and evidence...." The court must then send such recommendations to the responding state (Iowa). Iowa Code § 252A.6(7) (1987).

South Dakota Codified Laws ch. 25-9A is complementary to our own chapter 252A. Section 25-9A-13 provides:

> If the initiating court finds the petition sets forth facts from which it may be determined that the obligor owes a duty of support ... it shall so certify and cause three copies of the petition and its certificate and one copy of this chapter to be sent to the responding court.

Section 25-9A-21 also provides that if the obligee cannot attend a hearing, and the obligor denies the substance of the petition, evidence may be taken either by deposition or by personal appearance.

■ Turning to the facts of the present case, we believe the evidence was sufficient pursuant to South Dakota Codified Laws ch. 25-9A and Iowa Code chapter 252A to find Alan obligated to repay South Dakota the support payments it made on behalf of Jason. While the Iowa district court in the present case could have benefited from a full hearing on the matter in South Dakota, the evidence sent by the South Dakota circuit court, plus the testimony obtained at the hearing in Iowa clearly shows that Alan was capable of providing Jason support.

Under Iowa law, both parents are under a legal duty to support their children, although the burden is not necessarily to be borne equally. *Petition of Deierling*, 421 N.W.2d 168, 171 (Iowa App.1988). Our courts have recognized that except in the most extenuating circumstances. *In re Marriage of Heinemann*, 309 N.W.2d 151, 153 (Iowa App.1981). Additionally, we have recognized that a proceeding under ch. 252A is an alternative remedy to obtain child support, and that the responding court might make its own determination of the needs of the parties contrary to other prior orders, and may make such new determinations as justice may require. *Iowa Dep't of Soc. Serv. v. Blakeman*, 337 N.W.2d 199, 202 (Iowa 1983); *Beneventi v. Beneventi*, 185 N.W.2d 219, 223 (Iowa 1971); *Moore v. Moore*, 252 Iowa 404, 411, 107 N.W.2d 97, 100-01 (1961).

Alan appears to argue that merely because Jason lived with his grandmother, he was completely absolved from any payments of support. The record, however, shows that Jason's grandmother had to obtain ADC payments in order to help support Jason and that Jason had to hold a part-time job as well to support himself. The South Dakota circuit court certified that Jason was a child in need of assistance. While more facts could have been obtained at a more extensive hearing, there

is sufficient evidence to show Jason was in need of assistance. Alan himself agreed at the Iowa hearing that Jason was likely not receiving enough assistance to meet his basic needs. We also find it disturbing that, according to Alan's own testimony, he had not even taken the time to find out if Jason was in need. Alan cannot simply shrug off the important responsibilities of parenthood when he decides the other parent has shirked her responsibility.

 We likewise reject Alan's argument that he is not obligated to pay on the basis of Iowa Code § 252A.3(2). Alan somehow reads the statute as saying the parent being pursued for support is not liable for support unless the other is dead or incapable of supporting such children. We find no support for such a harsh interpretation of § 252A.3(2). As we noted earlier, both parents are required to provide support in a fair and reasonable sum according to their ability to pay. Alan is an accountant and earns approximately $2,990 net each month. Alan has the ability and should be required to repay his share of the money paid out as ADC payments on behalf of Jason, which amounted to $2,891.

Consistent with our finding above, we also believe that Polly is liable for one-half of the ADC payments. Though the record is spotty, we think the evidence is clear that Polly abandoned her responsibilities in raising Jason by having Jason's grandmother and South Dakota pick up the tab. Polly is apparently employed on a full-time basis at the Con–Agri plant in Jackson, Minnesota. There is no indication that Polly had provided any support to Jason. Polly has remarried and her spouse's income should be considered in evaluating her ability to pay. *Page v. Page*, 219 N.W.2d 556, 558 (Iowa 1974). We believe that, under the circumstances, the district court was correct in holding that Polly was responsible for one-half of the past assistance provided.

We hope that our holding today sends a message to those divorced parents who play "ping-pong" with their children's futures. Despite arguments proposed by Alan, support of a minor child is not something that can be switched on or off like a light bulb but is a constant born out of the great responsibilities carved out of the decision to become parents. The child should not have to pay for the errant whims of a parent.

AFFIRMED.

SACKETT, J., takes no part.