**In Re Marriage of Gary Michael SMILEY and Debra Ann Smiley.**

**Upon the Petition of Gary Michael Smiley, Appellant,**

**And Concerning Debra Ann Smiley n/k/a Debra Ann Lamb, Appellee.**

No. 93–459.

Supreme Court of Iowa.

June 22, 1994.

Rehearing Denied July 25, 1994.

Michael J. Winter, Council Bluffs, for appellant.

John M. Trewet and Richard Howard, Atlantic, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

McGIVERIN, Chief Justice.

The main question here is whether the district court properly modified the custody provisions in a dissolution of marriage de-

cree. We award physical care of three children to their father. Thus, we vacate the decision of the court of appeals, affirm the district court judgment in part and reverse it in part, and remand for further proceedings.

I. *Background facts and proceedings.* The marriage of Gary and Debra Smiley was dissolved in 1987. The dissolution decree gave Debra the primary physical care of their three sons, Travis, born February 27, 1977, Dustin, born October 17, 1978, and Bradley, born June 22, 1981. Joint legal custody of the children was given to both parents. The decree gave Gary visitation rights and ordered him to pay child support to Debra.

Debra married Rocky Lamb in October 1988 and the two had a son, Devon, in 1991. They presently live in Red Oak. Debra works in a factory and Rocky works for a construction company.

Gary married his second wife, Peggy, in 1989. He is a farmer and she works as a business manager in an eye clinic. They live on Gary's farm near Imogene.

In the fall of 1991, Travis and Dustin asked Gary to take some action so they could live with him rather than their mother. They said Bradley had the same desire. In April 1992 Gary filed an application to modify the custody provisions of the 1987 decree, requesting that he receive physical care of all three boys.

On June 7, 1992, Travis and Dustin apparently found marijuana in Debra's home and turned it over to the sheriff's office. They then called Gary, who picked them up and took them to his farm home, where they have lived ever since. Gary picked up Bradley the next day. Bradley did not return to Debra's home until his birthday, June 22. Bradley has since remained with Debra. No formal exchange of visitation occurred between June and Christmas of 1992, and it occurred then only upon court order. Debra has not allowed visitation of Bradley with Gary as provided by the decree.

While the boys lived with Debra and Rocky, Rocky had several outbursts of temper that scared and concerned them. During Christmas of 1992, Debra told Rocky that if he could not control his temper, she would divorce him.

Following a hearing on Gary's modification application, the district court changed the physical care of Travis and Dustin to Gary, but left physical care of Bradley with Debra. The district court in January 1993 ordered Gary's support obligation terminated as of February 1, 1993. The court made no other provision for child support.

Gary appealed and Debra cross-appealed. The court of appeals reversed, concluding that Debra should retain physical care of all three boys and that Gary's child support obligations should therefore continue as set forth in the 1987 decree.

We granted Gary's application for further review.

 In this equity action, our review is de novo. Iowa R.App.P. 4. We examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek,* 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

 II. *Physical care of Travis and Dustin.* The district court modified the 1987 dissolution decree and placed physical care of Travis and Dustin, the two older boys, with Gary. Petitioner Gary contends that the court of appeals erred in reversing that modification order. We agree with the district court.

The dissolution decree gave the parties joint legal custody of the three children but gave Debra their physical care. Under the governing statute, joint custody gives the parents equal legal rights and responsibilities over the children. Iowa Code § 598.1(3) (1991). It is distinguished from physical care, which is the right and responsibility to maintain the principal home and to provide routine care for the children. Iowa Code § 598.1(5). Although the concepts present different issues, they are obviously related.

"To change a custodial provision of a dissolution decree, the applying party must estab-

lish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

Our de novo review of the record leads us to the conclusion that the district court properly entered the challenged modification order changing primary physical care of Travis and Dustin from Debra to Gary. We believe Travis's and Dustin's living conditions and interests have materially and substantially changed since the 1987 decree.

First, the needs of the boys have changed significantly since the 1987 decree. Travis is now 17 and Dustin is 16. They greatly enjoy farm work and living on the farm with Gary and his present wife, Peggy. They have become involved with many activities on the farm and with 4-H projects. They have learned from Gary to weld, fix farm machinery and vehicles, and raise cattle, skills that will increase their ability to provide for themselves and promote self-reliance. They have respect and love for Gary and Peggy. Moreover, Travis and Dustin—now nearly adults—have expressed and testified to their strong opposition to Debra's continued physical care of them. *See* Iowa Code § 598.-41(3)(f).

Second, there have been material and substantial changes in the conditions of Gary's and Debra's households. Both Gary and Debra have remarried. Gary and his new wife Peggy together give more attention to Travis and Dustin than Gary alone could at the time of the 1987 dissolution decree. Gary has encouraged Travis and Dustin to help with the varied activities on the farm, and Gary's schedule as a farmer allows him to attend the boys' extracurricular activities and sports, in which he has actively encouraged them to participate. Peggy's presence has helped to maintain basic discipline and a stable home for the children. *See* Iowa Code § 598.-21(8)(g) (providing that in determining whether a substantial change of circumstances has occurred the court shall consider among other things remarriage of a party).

Conversely, Debra's second husband, Rocky, has diminished her ability to provide a stable home environment. Rocky has threatened Gary with violence on several occasions. He has made profane disparaging remarks to the boys concerning Gary. He has had violent outbursts in the home. In different arguments with Debra, he has torn a phone off the wall, thrown a Christmas tree out of the house, and thrown silverware and glassware.

In addition to this increased turbulence in Debra's household, since her marriage to Rocky other instances of inappropriate behavior have occurred. Debra admitted that for about a year, while the children were living with her, a condom had been left on a bell in the dining room. And in addition to finding marijuana in Debra's house shortly after Gary filed his application for modification, Travis and Dustin testified that they had overheard Debra and Rocky arguing about Rocky's spending money on drugs.

Finally, Debra has had to begin working the night shift at a manufacturing plant. Rather than working days, she now works from 3:30 p.m. to midnight. She is usually sleeping at the time the boys would go to school, and she is generally unable to participate in their after-school activities. She also has apparently attempted to limit their participation in the 4-H program and summer sports. Travis and Dustin do not like Rocky. They also have a lack of trust concerning their mother.

We do have some concern about the boys' visitation with their mother. The district court provided visitation rights for Debra, with which we agree. But after Travis and Dustin went to live with Gary in June 1992, they saw very little of their mother. Debra contends that Gary has intentionally limited their contact with her, while Gary maintains that he has tried but is unable to get the boys to visit or even call their mother. Gary apparently has tried to make arrangements with Debra himself, but Debra screens her phone calls on an answering machine so as to avoid contact with him. The boys testified that they have avoided calling her and that when they have she has not returned their messages.

We therefore admonish the parties to work to allow visitation between Debra and Travis and Dustin. *See* Iowa Code § 598.1(6) ("Refusal by one parent to provide [the opportunity for maximum contact between parent and child] without just cause shall be considered harmful to the best interest of the child."); *cf. In re Marriage of Quirk–Edwards*, 509 N.W.2d 476, 480 (Iowa 1993) ("If visitation rights of the noncustodial parent are jeopardized by the conduct of the custodial parent, such acts could provide an adequate ground for a change of custody.").

We conclude, as did the district court, that conditions since the 1987 decree have so materially and substantially changed that realistically the best interests of Travis and Dustin make it expedient to place their physical care with Gary.

III. *Physical care of Bradley.* Petitioner Gary also contends that the district court and court of appeals erred in refusing to award him physical care of his youngest son, Bradley. We agree.

Siblings should not be separated from one another without good and compelling reasons. *In re Marriage of Wahl*, 246 N.W.2d 268, 270 (Iowa 1976). "As the innocent victims of marital bankruptcy, they should not be denied this benefit except when their best interests require it." *Id.*

Here, although Bradley has not expressed the strong opposition to living with Debra that Travis and Dustin have, he loves his brothers and has shown signs of depression while living with Debra. He is close in age and affection to his two older brothers, who have flourished under Gary's and Peggy's care, and will benefit from their constant association.

In addition, Debra has refused to allow Gary to visit with Bradley, thereby allowing Gary to see Bradley only at school. Even with those visits, Gary has encountered interference; Rocky attempted to pick a fight with Gary when Gary came to watch Bradley in a school musical program.

Gary and Peggy will provide a more stable home than Debra has been able to. We see no reason to separate these three boys. The same basic reasons support the change of physical care of all three boys to Gary.

Thus, we conclude that both parties shall continue to have joint legal custody of Travis, Dustin, and Bradley. Gary shall have physical care of Travis, Dustin, and Bradley, and Debra shall have reasonable visitation with them as already ordered by the district court.

IV. *Child support.* Gary contends that the district court erred in its January 1993 order in terminating his child support obligation to Debra effective February 1, 1993, arguing that the termination should have been effective July 1, 1992 because Travis and Dustin have been living with Gary since June 7 of that year. Debra contends the court should have fixed child support under our guidelines. *See* Iowa Code § 598.21(4)(a) and (9). The parties also dispute the amount of Gary's income for purposes of determining their support obligations.

We agree with the district court's determination of the date for change in child support. We disagree, however, with the court's failure to fix support concerning the children after February 1, 1993.

We remand the case to the district court for determination of appropriate child support concerning all three children under our guidelines under the present record and such additional evidence of current income and expenses as may be presented by the parties. The support order should cover the period from February 1, 1993 to the present, while Travis and Dustin have been in Gary's physical care and Bradley has been in Debra's physical care. In addition, the order should determine the child support Debra should pay to Gary after the filing of this opinion while all three children are in Gary's physical care.

V. *Disposition.* We vacate the decision of the court of appeals. We affirm the district court's award of primary physical care of Travis and Dustin to Gary, but reverse its denial of Gary's application for physical care of Bradley. We remand the cause to the district court for the determination of the

parents' child support obligations consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND RE-VERSED IN PART; REMANDED.**

All Justices concur except CARTER, J., who concurs in part and dissents in part.

CARTER, Justice (concurring in part, dissenting in part).

I would affirm the district court's decree in all respects.