In re the MARRIAGE OF Jeanice Elaine PUNDT and Ricky Dean Pundt.

Upon the Petition of Jeanice Elaine Pundt, Appellee,

And Concerning Ricky Dean Pundt, Appellant.

No. 95–0740.

Court of Appeals of Iowa.

Feb. 28, 1996.

Barry S. Kaplan of Fairall, Fairall, Kaplan, Hoglan, Condon & Klaessy, Marshalltown, for appellant.

Sharon Soorholtz Greer of Cartwright, Druker & Ryden, Marshalltown, for appellee.

Considered by SACKETT, P.J., and CADY and HUITINK, JJ.

HUITINK, Judge.

Jeanice and Ricky Pundt were married in 1980. They have three children: Derrick, born on August 27, 1982; Danielle, born on May 10, 1985; and Devin, born on December 19, 1987. During the marriage the parties lived in State Center.

Jeanice was thirty-four years old at the time of the dissolution hearing. She is a high school graduate and has a degree as a dental assistant. She is presently taking classes in business administration. Jeanice is employed by the United States Postal Service.

At the time of the dissolution hearing, Ricky was thirty-five years old. He has a high school decree. He is employed in his parents' grocery store in State Center. He plans on eventually buying his parents' interest in the store.

The parties separated in February 1994, when Jeanice moved to Marshalltown with the two girls, Danielle and Devin. Derrick stayed in State Center with his father. In May 1994, the parties entered into a stipulation which continued this split physical care arrangement, with Jeanice having physical care of Danielle and Devin, and Ricky having physical care of Derrick. Jeanice later changed her mind and decided to seek custody of all three children.

At the dissolution hearing, Jeanice testified she felt Ricky was polarizing the family along gender lines. She stated Ricky favored Derrick and did not exhibit much interest in the girls. She felt that while in Ricky's care, Derrick began to exhibit more of a disparaging attitude towards the girls. She testified the girls missed Derrick, and she felt it would be better not to separate the children.

Ricky only sought custody of Derrick. He stated he and Derrick had similar interests, such as watching sports and playing basketball. Ricky testified Derrick was his best friend.

Derrick testified he preferred to live in State Center with Ricky. He stated Ricky helped him with schoolwork and sports. Derrick expressed interest in his grandparents' grocery store. He also stated he had many friends in State Center and did not want to move.

The court appointed Kenneth Riedel, an administrator for the Iowa Department of Human Services, to conduct a custody evaluation. Riedel's first recommendation was to maintain the present situation, with Jeanice having physical care of Danielle and Devin, and Ricky having physical care of Derrick. This recommendation was based primarily on a concern that Derrick would have a difficult time adjusting to moving to Marshalltown. In the alternative, Riedel recommended that

Jeanice receive physical care of all three children.

The district court entered a dissolution decree for the parties on April 24, 1995. The district court granted the parties joint legal custody of the children, with Jeanice having primary physical care. The court found Jeanice had been the primary caretaker for all three children prior to the separation. The court questioned Ricky's level of maturity and his dependence on his parents. The court stated Ricky needed to be more of a parent to Derrick instead of a "best friend." The court decided split physical care was inappropriate in this case. Ricky was granted visitation with the children and ordered to pay child support.

Ricky has appealed the custody provision of the parties' dissolution decree. He seeks to have primary physical care of Derrick. Ricky asserts the children have been in a split physical care situation since February 1994, with no ill effects. He believes the trial court misinterpreted his testimony that Derrick was his best friend. Ricky states they simply have the same interests and like to do things together. Ricky claims the court did not give enough weight to Derrick's preference to live with him.

■ Our review of this equitable action is de novo. Iowa R.App.P. 4. We are not bound by the district court's findings of fact, but we do give them deference because the district court had an opportunity to view, firsthand, the demeanor of the witnesses when testifying. *In re Marriage of Brown,* 487 N.W.2d 331, 332 (Iowa 1992).

■ The best interests of the children dominate our consideration in child custody cases. *In re Marriage of Brainard,* 523 N.W.2d 611, 614 (Iowa App.1994). Numerous factors exist to supplement the best interests standard, which are enumerated in Iowa Code section 598.41(3). *Id.* The critical issue in determining the best interests of the child is which parent will do better in raising the child into a healthy, content, well-adjusted young adult. *Id.*

■ Split physical care occurs when each parent has physical care of at least one child. *In re Marriage of Will,* 489 N.W.2d 394, 397 (Iowa 1992). There is a presumption that siblings should not be separated. *In re Marriage of Smiley,* 518 N.W.2d 376, 380 (Iowa 1994). Split physical care is generally opposed because it deprives children of the benefit of constant association with one another. *Will,* 489 N.W.2d at 398. The rule is not ironclad, however, and circumstances may arise which demonstrate that separation may better promote the long-range best interests of children. *Id.* Good and compelling reasons must exist for a departure. *In re Marriage of Quirk–Edwards,* 509 N.W.2d 476, 480 (Iowa 1993).

■ We initially disagree with the district court's characterization of Ricky's relationship with Derrick. The court's concern that Ricky was unable to separate the concept of "buddy" from parent is inaccurate and overstated. This characterization of Ricky's relationship is notably absent from any assessment made by the mental health professional involved in this case. As Ricky testified, they have similar interests, and enjoy each other's company. We find Ricky and Derrick had a positive father-son relationship.

We find several factors in this case which would support split physical care of the children. Both of the parents are capable of caring for the children. The custody evaluator recommended split physical care based on a finding Derrick was established in State Center. By staying in State Center, Derrick has stability in his home, school, and friends. Moreover, the parties were in a split physical care arrangement from the time they separated in February 1994 until the dissolution decree was entered in April 1995. This situation does not appear to have been detrimental to the children.

■ Furthermore, we consider Derrick's stated preference to live with Ricky. When a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment, his or her wishes, though not controlling may be considered by the court, with other relevant factors, in determining child custody rights. *In re Marriage of Hunt,* 476 N.W.2d 99, 101 (Iowa App.1991). A minor child's preference to live with one parent is relevant and cannot be ignored. *In re Mar-*

*riage of Blume*, 473 N.W.2d 629, 631 (Iowa App.1991).

Derrick was twelve years old at the time this matter was tried. He will be fourteen in August of 1996. Derrick was able to express several reasons for his preference to reside with Ricky. These include his desire to preserve established friendships and extended family relationships. Derrick is also interested in athletics and believes his chances of participation in sports are better if he remains in State Center. Although Derrick's stated reasons for his preference may appear superficial, they are nevertheless profoundly important to him. The significance of Derrick's sentiments was cited as an important factor in the custody evaluator's recommendation to award Derrick's physical care to Ricky. Moreover, we note the absence of any evidence indicating Derrick's sentiments have been manipulated or that he seeks to diminish the quality of his relationship with Jeanice or the other children.

We also find Derrick's preferences can be accommodated without the negative consequences traditionally associated with split physical care. As joint legal custodians Ricky and Jeanice will have equal participation in decisions affecting the children's legal status, medical care, education, extracurricular activities, and religious instruction. Iowa Code § 598.41(5). Additionally, the decree's provisions for liberal visitation and the parties' physical proximity should allow the children constant association with one another. Split physical care under these circumstances will facilitate rather than impede the custodial objectives referred to earlier.

As stated earlier, our ultimate concern in this case is the welfare of these children. It is not our purpose to determine the relative importance of father-son or mother-son relationships in general. Such considerations are a nonessential distraction. We are not inclined to subordinate Derrick's ultimate happiness to accomplish a noble but less important social objective.

Based upon all of the circumstances in this case, we conclude Ricky should have primary physical care of Derrick. We therefore modify the custody provision of the dissolution decree to make this change.

The district court determined Jeanice had net monthly income of $1905.61 and Ricky had net monthly income of $1559. Using the child support guidelines, we find Jeanice must pay child support of $428 per month for Derrick. Ricky must pay child support of $467 for the support of Danielle and Devin. We subtract the difference between these two amounts and order Ricky to pay the net difference, $39 per month, as child support.

Jeanice is awarded reasonable visitation with Derrick, and on the same schedule Ricky has with Danielle and Devin. Jeanice should have visitation with Derrick on the same weekends and holidays the girls are with her, and Ricky should have visitation with the girls on the weekends and holidays he has Derrick, so the children may spend each weekend and holidays together.

We affirm the decision of the district court as modified. Costs of this appeal are assessed to Jeanice.

**AFFIRMED AS MODIFIED.**

SACKETT, P.J., concurs and concurs specially.

CADY, J., dissents.

SACKETT, Presiding Judge, specially concurring.

I concur with the majority opinion in all respects. I write separately because I think the time has come for the Iowa courts to reassess the presumption that after a dissolution, siblings be placed together. The need for sibling bonding should continue to be one of the factors the court must consider in making a custodial decision.

The presumption comes from an era when fathers were wage earners and mothers were given presumptions in favor of custody and stayed home with children. The divorced family of today generally does not fit that stereotype. Rather, both parents are employed outside the home in demanding jobs that limit the available time they have to spend with their children. This makes it difficult for a single parent with custody of a number of children to give all the children the individual parental attention each child needs and deserves.

I do not suggest bonding with siblings is not important. But, what we need to ask is if bonding with siblings is of greater importance than individual parental attention the children may be more likely to receive if custody is divided. I suggest, in many cases, the individual parental attention may be more important to the healthy development of the child than living with his or her siblings, particularly where the ages and interests of the children are not similar. I find that true here. Derrick, in staying with his father, will not have to compete with two younger siblings for parental attention from a mother employed full time outside the home and additionally taking business classes. Derrick will benefit from his father's individual attention as well as his grandparents' guidance. He will be with a parent who shares his interests. He also will stay in a school district where he is established.

I think in Derrick's mother's home he may well be cast in a role of substantial responsibility for his younger siblings rather than be offered the normal progressions of childhood. It is the need of these three children for individual parental attention that causes me to agree with the majority opinion. I do not consider this a gender issue.

I think the interests of children would be better served if the presumption of keeping siblings together lost its elevated position as a presumption, and we consider it one of the factors to be weighed in making custodial care decisions.

CADY, Judge, dissenting.

I respectfully dissent. The trial court correctly placed all the children with Jeanice, and I would affirm the trial court's decision without modification.

The majority opinion recognizes the presumption, etched into our law, that siblings should not be separated following the divorce of their parents. Yet, it has seriously diluted its importance, as well as its underlying purposes, by permitting it to be overcome by evidence which is far from compelling. The concurring opinion openly acknowledges the presumption should be abandoned.

The strong public policy of keeping sibling together following divorce is based on sound considerations. We have long recognized split physical care deprives children of the important benefit of growing up together. *In re Marriage of Will,* 489 N.W.2d 394, 398 (Iowa 1992). Moreover, separation of siblings only adds to the trauma of parental divorce, and further destroys the remaining semblance of familial ties. Jay M. Zitter, Annotation, *Child Custody: Separating Children by Custody Awards to Different Parents—Post–1975 Cases,* 67 ALR 4th 354, 360 (1989). The presumption against separation is overcome only when the circumstances demonstrate separation will promote the long range interests of the children. *Id.* Factors to consider include the caretaking abilities of the parents, the difference in age between the children, whether the children would have been together if split physical care was not ordered, the relationships between the children, and the likelihood one of the parents or children would turn the other children against the other parent.

The evidence presented at trial to support the separation of siblings really boils down to a strong father-son attachment. Yet, that circumstance, nor any of the other circumstances mentioned by the majority, fails to supply the good and compelling reasons needed to overcome the legal presumption. Most of the circumstances mentioned by the majority to support the decision to separate the children are no different than the normal circumstances experienced by children when one parent moves from the community where the family resided during the marriage. Evidence presented also illuminated the detrimental effect the split custody would have on Derrick's attitude toward his sisters. The district court also questioned Ricky's maturity level and his abilities to parent his son. We are directed to give weight to the finding of the trial court. Iowa R.App.P. 14(f)(7). In this light, the strong presumption against children being separated from one another has not been overcome.

A strong father-son relationship is no more important than a strong mother-son relationship or a strong sibling-sibling relationship. This is an equitable principle that strikes at

the core of this case, and reveals the fundamental flaw in the decision of the majority. The driving reason custody of these children was split was the close relationship between Derrick and his father. This is not the factor I would use to split children, nor is it one I believe our law endorses.

Like the majority, I too have the best interests of Derrick in mind, but no less than the best interests of Danielle and Devin. The interests of these three children have been written into our governing legal principles, and motivate my departure from the majority. Those interests should not be overcome by the desires of a pre-adolescent boy or those of a father who singles out one of his children as his best friend.